**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| KATENA COMPUTING TECHNOLOGIES, INC., | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civil Case No. 3:23-mc-48-MPS |
| | : | |
| JIM DENAUT, | : | |
| | : | |
| Respondent, | : | August 25, 2023 |
| | : | |
| | : | |
| -and- | : | |
| | : | |
| COINMINT, LLC, | : | |
| | : | |
| Intervenor Defendant. | : | |

**RESPONDENT JIM DENAUT'S POST-HEARING BRIEF SUPPORTING RELIEF
AGAINST COINMINT, LLC AND GORDON REES SCULLY MANSUKHANI, LLP**

## **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ................................................................................. 1

**ARGUMENT** .............................................................................................................. 3

I.   The Documentary Record and Testimony Elicited at the Evidentiary Hearing Corroborate Mr. DeNaut's Account of the January 6 Call and Underscore That Coinmint's and Gordon Rees' Accounts Are Not Credible .......................................................... 4

II.   Gordon Rees Failed to Warn Mr. DeNaut That It Did Not Represent Him...................... 11

III.   The Documentary Record and Testimony Elicited at the Evidentiary Hearing Refuted Coinmint's Defenses ...................................................................... 13

A.   Mr. DeNaut Was Not Adverse To Coinmint and Reasonably Believed Coinmint's Lawyers Could Represent Him.................................................................. 13

B.   Mr. Foret's Participation in the January 6 Call Was Consistent With Mr. DeNaut's Reasonable Belief that Gordon Rees Was Representing Him .................................... 17

C.   Mr. DeNaut Shared New, Confidential Information With Gordon Rees .................. 18

D.   Gordon Rees Provided Legal Advice to Mr. DeNaut................................................. 19

IV.   The Equities Favor Mr. DeNaut ................................................................... 20

**CONCLUSION** ........................................................................................................ 21

## **TABLE OF AUTHORITIES**

**Cases**                                                                                              **Page(s)**

*Anten v. Superior Ct.*,
  233 Cal. App. 4th 1254 (Cal. Ct. App. 2015)........................................................................ 18

*Blumenthal v. Kimber Mfg., Inc.*,
  826 A.2d 1088 (Conn. 2003) ............................................................................................ 19

*Costco Wholesale Corp. v. Superior Ct.*,
  47 Cal. 4th 725 (Cal. 2009) .............................................................................................. 19

*Gordon v. Superior Court*,
  55 Cal. App. 4th 1546 (Cal. Ct. App. 1997)..................................................................... 21

*Kearns v. Fred Lavery Porsche Audi Co.*,
  745 F.2d 600 (Fed. Cir. 1984) .......................................................................................... 16

*Lopez v. Pannone*,
  2011 WL 4031537 (Conn. Super. Ct. Aug. 17, 2011)...................................................... 17

*Luck v. McMahon*,
  2021 WL 4248887 (D. Conn. Sept. 17, 2021)................................................................... 3

*Marino v. Urological Assocs. of Bridgeport, P.C.*,
  2019 WL 5298730 (Conn. Super. Ct. Sept. 19, 2019) ..................................................... 20

*Myers v. Superior Ct*,
  2018 WL 3598085 (Cal. Ct. App. July 27, 2018) ............................................................ 17

*People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*,
  20 Cal. 4th 1135 (Cal. Sup. Ct. 1999) ............................................................................. 20

*Peralta v. Cendant Corp.*,
  190 F.R.D. 38 (D. Conn. 1999) ........................................................................................ 13

*In re Coordinated Pretrial Proc. in Petroleum Prods. Antitrust Litig.*,
  658 F.2d 1355 (9th Cir. 1981) .......................................................................................... 13

*Rand v. Birbrower*,
  31 F. App'x 748 (2d Cir. 2002).......................................................................................... 16

*Rosen v. Cream*,
  2018 WL 2146761 (Cal. Ct. App. May 10, 2018)............................................................ 20

*Santos v. United Parcel Serv. Inc. (Ohio)*,
  2020 WL 6784220 (N.D. Cal. Nov. 18, 2020) ................................................................ 11

*Shoreline Computs., Inc. v. Warnaco, Inc.*,
  2000 WL 371206 (Conn. Super. Ct. Apr. 3, 2000) .................................................. 12

*State v. Cascone*,
  487 A.2d 186 (Conn. 1985) .................................................................................... 18

*Turner ex rel. Int'l Bhd. Of Elec. Workers Loc. 1200, AFL-CIO v. CBS Broad. Inc.*,
  599 F. Supp. 3d 187 (S.D.N.Y. 2022) ....................................................................... 4

*United States v. Dennis*,
  843 F.2d 652 (2d Cir. 1988) .................................................................................. 18

*Upjohn Co. v. United States*,
  449 U.S. 383 (1981) ............................................................................................. 13

*Wang v. Heck*,
  203 Cal. App. 4th 677 (Cal. Ct. App. 2012) ........................................................... 20

**Rules**

Cal. R. Prof. Conduct 1.10 ......................................................................................... 21

Cal. R. Prof. Conduct 1.18 ......................................................................................... 21

Cal. R. Prof. Conduct 4.3 ........................................................................................... 11

Conn. R. Prof. Conduct 1.10 ...................................................................................... 21

Conn. R. Prof. Conduct 1.18 ...................................................................................... 21

**Other Authorities**

A.B.A. Talking to the Other Side's Employees and Ex-Employees ........................................ 12

## PRELIMINARY STATEMENT

The dispute between Jim DeNaut and Coinmint/Gordon Rees that is pending before the Court presents two stark, irreconcilable versions of events.  Mr. DeNaut's testimony that Gordon Rees offered to represent him on January 6, 2023, and that he accepted—an account Mr. DeNaut has consistently given for months—is corroborated by the entire documentary record.  Coinmint's and Gordon Rees' account of the January 6 call, on the other hand, has morphed over time, conflicts with the documentary record (including *Gordon Rees' own contemporaneous statements*), and defies common sense.  The testimony and evidence overwhelmingly demonstrate that Gordon Rees held itself out as Mr. DeNaut's counsel in the arbitration between Coinmint and Katena both before and after the January 6 call, just to turn on its client weeks later and subpoena him and sue him over the same matter.  This is a textbook violation of the protections afforded to a client by his lawyers.

Over the course of this dispute, Coinmint and Gordon Rees have asserted various justifications for their conduct, all of which are legally unsupportable and/or factually unfounded. *See* Respondent's Pre-Hearing Brief, *Katena Computing Techs., Inc. v. Jim DeNaut*, No. 23-mc-48, Dkt. No. 79 at 13–16 (D. Conn. Aug. 2, 2023) (hereafter, "Pre-Hearing Br.").  At the evidentiary hearing, counsel for Coinmint focused on a theory that Mr. DeNaut could not reasonably have believed he was represented by Coinmint's lawyers because his interactions with Katena somehow made him adverse to Coinmint—an apparent attempt at a fallback argument in case the Court were to find that Gordon Rees had made an offer of representation that was accepted.  But the undisputed evidence that emerged disproved Coinmint's narrative: Mr. DeNaut never worked for Katena, whether as an advisor or otherwise; in any event, Mr. DeNaut's last interactions with Katena were more than half a year before the January 6, 2023 call; and, critically, Mr. DeNaut never believed himself to be adverse to Coinmint, in part because the strategies he

1

pursued were to *Coinmint's benefit*—a fact Coinmint's General Counsel, Randy Foret ("Mr. Foret") conceded at the hearing.  To the extent Mr. DeNaut's motives on January 6, 2023 were ever in doubt, the record reflects that after the call, Mr. DeNaut forwarded dozens of emails (including many emails he had with Katena) to Mr. Foret, in an effort to be helpful.  There was no adversity here at all—much less the kind of extreme adversity that might preclude a reasonable belief in representation under the case law.

In stark contrast to Mr. DeNaut's credible testimony at the hearing, the testimony of Gordon Rees partner Fletcher Alford ("Mr. Alford"), and that of Mr. Foret, could not be reconciled with each other, nor with the documents.  Most strikingly, in an email roughly a week before the January 6, 2023 call, which Coinmint initially sought to shield from disclosure, Mr. Alford told his Gordon Rees colleagues and Mr. Foret that Gordon Rees *told Katena's counsel that Gordon Rees was representing Mr. DeNaut in the arbitration*.  Exhibit V, Email from F. Alford to R. Foret *et al.* at GRSM_0000359 (Dec. 28, 2022) (**"We told Taber that we can now confirm we represent DeNaut"**) (emphasis added).[1]  It thus stands to reason that when Mr. Alford spoke to Mr. DeNaut for the first time on January 6, 2023, the call transpired as Mr. DeNaut has consistently explained—with Gordon Rees promising to represent Mr. DeNaut, per Gordon Rees' previous statement to Katena's counsel.  Emails Gordon Rees sent following the January 6 call similarly support Mr. DeNaut's account and refute Mr. Alford's and Mr. Foret's.  *See, e.g.*, Exhibit Z, Email from F. Alford to J. Taber *et al.* at KATENA_000066 (Jan. 6, 2023) (Mr. Alford writing *three hours* after the January 6 call, **"I can confirm that we can produce Mr. DeNaut in New York on a mutually-agreeable date the week of February 13."**) (emphasis added).  In light of documents such as these, Mr. Alford's and Mr. Foret's denials are simply not credible.

---

[1] Exhibit letters and numbers refer to the exhibits admitted into evidence at the August 7–8, 2023 evidentiary hearing.

This is a problem of Coinmint's and Gordon Rees' own making.  Coinmint and Gordon Rees also could have taken corrective action many months ago, when Kobre & Kim first surfaced the issue.  Instead, the problem has lingered, forcing Mr. DeNaut to expend considerable resources to protect his rights.  Any burden that Coinmint and Gordon Rees allege they will suffer from switching counsel to cross-examine Mr. DeNaut is far outweighed by the need to safeguard a client's expectations of loyalty and confidentiality by his lawyers.  Mr. DeNaut respectfully submits that he has met his burden to establish the existence of an attorney-client relationship and, accordingly, this Court should enter an order precluding Coinmint from using Gordon Rees to question Mr. DeNaut in the arbitration, and prohibiting Coinmint and Gordon Rees from violating the confidentiality attached to the information Mr. DeNaut provided during the attorney-client discussion on January 6, 2023.

## ARGUMENT

Coinmint and Gordon Rees would have this Court believe that Gordon Rees told nearly everyone *but* Mr. DeNaut that Gordon Rees was representing Mr. DeNaut in the arbitration between Coinmint and Katena.  Their testimony is, moreover, that Gordon Rees committed to produce Mr. DeNaut for a deposition in a specific timeframe without first discussing with Mr. DeNaut his availability and willingness to be produced, on Coinmint's behalf, during a call that had ended just three hours prior.  None of this makes any sense for a simple reason: it is not true.  Rather, the testimony elicited and evidence presented at the evidentiary hearing prove Mr. DeNaut's account of the January 6 call, far beyond the preponderance standard that governs this Court's *de novo* review.  *See, e.g.*, *Luck v. McMahon,* 2021 WL 4248887, at *33 (D. Conn. Sept. 17, 2021) ("The burden of proving each element of the attorney-client privilege, by a fair preponderance of the evidence, rests with the party seeking to assert it.") (internal citations omitted); *see also Turner ex rel. Int'l Bhd. Of Elec. Workers Loc. 1200, AFL-CIO v. CBS Broad.*

*Inc*., 599 F. Supp. 3d 187, 194 (S.D.N.Y. 2022) (deference to an arbitral panel's adjudication of non-party rights not appropriate because "non-parties generally have not consented to have their legal rights adjudicated by an arbitrator rather than a court.").

**I.      The Documentary Record and Testimony Elicited at the Evidentiary Hearing Corroborate Mr. DeNaut's Account of the January 6 Call and Underscore That Coinmint's and Gordon Rees' Accounts Are Not Credible**

Mr. DeNaut, a non-lawyer, has for months consistently provided his detailed recollections of the January 6, 2023 call.  *See* Affidavit of Jim DeNaut, *DeNaut v. Gordon Rees Scully Mansukhani LLP*, No. FST-CV23-6061290-S, Dkt. No. 102 (Conn. Super. Ct. May 10, 2023) ("DeNaut Aff.").  These recollections happen to match how many litigators tend to carry out such conversations—something that Mr. DeNaut, who has limited experience with litigation, would have trouble inventing.  His testimony was as follows:

- First, Gordon Rees introduced themselves, Transcript of August 7, 2023 Evidentiary Hearing ("Day One Tr.") at 64:14–17;

- Second, Mr. Alford took the lead and stated that Mr. DeNaut "could be very helpful to [Coinmint] in the matter" and "asked for [his] availability to testify at the upcoming hearing."  Mr. DeNaut stated that he was available, *id*. at 65:19–66:2;

- Third, after the discussion about Mr. DeNaut's availability, Mr. Alford offered to represent him, to prepare Mr. DeNaut for the hearing, and to "sit next to [Mr. DeNaut] at the hearing," *id*. at 66:3–9;

- Fourth, Mr. Alford communicated that he would send Mr. DeNaut an engagement letter and that Coinmint had offered to "pay for the representation" and "to reimburse" Mr. DeNaut for his expenses, *see id*. at 66:13–22;

- Fifth, Gordon Rees and Mr. DeNaut discussed various substantive topics, during which time Gordon Rees fielded questions about Mr. DeNaut's testimony and advised him about responses to difficult issues, *id*. at 69:7–71:10;

- Sixth, the call concluded with Mr. DeNaut confirming that he would receive an engagement letter from Mr. Alford, *id*. at 73:7–11; and

- After the call ended, Mr. DeNaut called Mr. Foret, Coinmint's General Counsel. During that call, Mr. Foret indicated that the call with Gordon Rees was helpful, and Mr. Foret asked Mr. DeNaut to search for emails between him and Katena, and to forward them to Mr. Foret.  Mr. DeNaut did so.  *See id*. at 73:12–75:15.

This Court need not simply take Mr. DeNaut's word for how the January 6 call unfolded (although it could, given his demeanor and credibility) because Mr. DeNaut's testimony was corroborated at every turn by the contemporaneous documentary record.  That record includes several documents ***to which Mr. DeNaut and his counsel had no access*** when Mr. DeNaut first provided, and then reaffirmed, his account of the January 6 call.  If, as Coinmint and Gordon Rees contend, Mr. DeNaut is not testifying accurately as to the January 6 call, it would have been a remarkable feat for him to present an account that so precisely marries with the documentary record that he had not yet seen or known about.  The much more likely explanation—which happens to be correct—is that the documentary record matches Mr. DeNaut's account because his account is true.

As the documents demonstrate, in the weeks leading up to the January 6 call, Katena's counsel (Perkins Coie) repeatedly asked Gordon Rees to confirm whether it represented Mr. DeNaut.  Day Two Tr. at 51:9–15; Day One Tr. at 274:14–275:2.  After at least two emails to which Gordon Rees did not respond on the question of representation, Exhibit R, Emails from J.

Taber to F. Alford *et al.* at GRSM_0000053–55 (Dec. 23, 2022), Mr. Alford explicitly told Katena's counsel during a meet and confer on December 28, 2022 that Gordon Rees was in fact representing Mr. DeNaut in the arbitration.  Exhibit V, Email from F. Alford to R. Foret *et al.* at GRSM_0000359 (Dec. 28, 2022) (**"We told [Jacob] Taber [Katena's counsel] that we can now confirm we represent DeNaut**.**"**) (emphasis added); Exhibit Y, Email from J. Taber to F. Alford *et al.* at KATENA CT000047 (Dec. 29, 2022) (**"You told me that your firm represents Mr. DeNaut, but do not currently have his agreement to be deposed."**) (emphasis added).  It stands to reason that Gordon Rees told Katena's counsel it represented Mr. DeNaut because it *was going to tell Mr. DeNaut it would represent him when they spoke*—a statement Gordon Rees would have needed to make on January 6, 2023 to make good on its representation to opposing counsel.

Mr. DeNaut's testimony that he discussed with Gordon Rees on January 6 his availability and willingness to be deposed in the arbitration as a Coinmint witness is likewise borne out by the documentary record.  Approximately **three hours** after the January 6 call ended, Mr. Alford wrote to the arbitral panel, **"I can confirm that we can produce Mr. DeNaut in New York on a mutually-agreeable date the week of February 13."**  *See* Exhibit Z, Email from F. Alford to J. Taber *et al.* at KATENA_000066 (Jan. 6, 2023) (emphasis added).  It is undisputed that the January 6 call between Mr. Alford and Mr. DeNaut was the first time they had met.  Day Two Tr. at 48:5–13.  Moreover, Mr. Alford testified that he did not speak with Mr. Foret, Coinmint's General Counsel, between the end of the January 6 call and his email to the Panel later that day confirming the production of Mr. DeNaut the week of February 13.  *Id*. at 72:12–73:10, 106:18–24.  Accordingly, the only plausible explanation for Mr. Alford's confirmation that he could produce Mr. DeNaut is that Mr. Alford and Mr. DeNaut in fact spoke during the January 6 call about when

Mr. DeNaut might be deposed in the arbitration, and on whose behalf—just as Mr. DeNaut testified.  *See* Day One Tr. at 65:24–66:2.[2]

The emails Gordon Rees later sent to opposing counsel and the Panel (on January 13 and 17, 2023, respectively), further support Mr. DeNaut's account, by suggesting that Gordon Rees had previously committed to producing and representing Mr. DeNaut, until it changed its mind. Exhibit T, Email from F. Alford to J. Taber *et al.* at GRSM_0000268 (Jan. 13, 2023) ("The documents Katena recently produced reveal a previously unknown conflict of interest that precludes our firm from representing or producing for deposition Messrs. DeNaut or Maloney."); Exhibit CC, Email from Gordon Rees to Panel and Perkins Coie at KATENA_CT000118 (Jan. 17, 2023) ("It should go without saying that Coinmint can *no longer agree* to produce Maloney and DeNaut for deposition in this matter.") (emphasis added).  As Mr. Alford made clear in his testimony, he had not reviewed these documents until after January 6.  Day Two Tr. at 70:3–7.  It stands to reason that Mr. Alford discussed representing Mr. DeNaut on January 6, and it was only after that day that Mr. Alford learned facts suggesting Gordon Rees would no longer represent and produce him.

Mr. DeNaut's consistent, credible, and corroborated account of the January 6 call stands in stark contrast to the testimony of Mr. Alford and Mr. Foret.  First, Mr. Alford's account has been a moving target:

---

[2] When asked how he picked the week of February 13 as Jim DeNaut's intended date of deposition, Mr. Alford testified that he "[did not] recall it being a subject" of the January 6 call, and that his "best recollection" was that the date instead came from "discussions that Mr. Foret *may have had* with Mr. DeNaut about his availability to testify."  Day Two Tr. at 106:1–10 (emphasis added).  Mr. Foret, however, did not testify that any such discussions took place prior to the January 6 call.  Day One Tr. at 223:3–228:5 (Mr. Foret and Mr. DeNaut had "start up communications [to] let him know that [Coinmint] was no longer represented by the Choate firm, that [Choate] had been replaced by Gordon Rees, and that Gordon Rees would want to follow-up on aspects of what was discussed with Choate.").

- When Kobre & Kim first contacted Mr. Alford to discuss the January 6 event, in March 2023, Mr. Alford said that he was "interviewing a witness—nothing more," *Affidavit of Benjamin Sirota* ¶ 8, *DeNaut v. Gordon Rees Scully Mansukhani LLP*, No. FST-CV23-6061290-S, Dkt. No. 103 (Conn. Super. Ct. May 10, 2023);

- When briefing this issue with the Panel, Mr. Alford apparently argued that Mr. DeNaut was a known adverse witness on January 6, 2023, as a result of a letter Coinmint's prior lawyers had sent Mr. DeNaut in November 2021, Transcript of June 6, 2023 Status Conference ("June 6 Status Conf Tr.") at 17:19–18:6, 18:22–19:3; and

- In briefing to the Connecticut state court, Gordon Rees conspicuously avoided any explanation of what happened during the January 6 call, instead offering a generalized, passive denial.  Gordon Rees' Opp. to Jim DeNaut's App. at 13, *DeNaut v. Gordon Rees Scully Mansukhani, LLP*, No. FST-CV23-6061290-S, Dkt. No. 112 (Conn. Super. Ct. May 25, 2023) ("[E]ven if Alford alluded to the potential for representing DeNaut individually, *which is denied*….") (emphasis added).

Following these piecemeal, contradictory depictions of the January 6 call, a critical piece of evidence emerged: the Court ordered Gordon Rees to produce an email dated December 28, 2022 (initially submitted by Gordon Rees only to the Court, *in camera*), making clear that Gordon Rees told opposing counsel it was representing Mr. DeNaut.  Boxed in by this evidence, Mr. Alford's account shifted.  At the evidentiary hearing, the explanation was no longer that Mr. DeNaut was an ordinary witness, or was a known adverse witness prior to January 6, 2023.  Instead, Mr. Alford testified that: (1) it was Gordon Rees' "plan" to represent Mr. DeNaut as of the start of the January 6 call (but that Mr. Alford never once expressed this "plan" to Mr. DeNaut over the course of the hour-long discussion that ensued); (2) during the discussion with Mr.

DeNaut, a "red flag" emerged that called into question whether Gordon Rees "could work with Mr. DeNaut" because Mr. DeNaut shared information that Coinmint would have to "deal with" (but again, Mr. Alford never shared with Mr. DeNaut that reaction); and (3) Gordon Rees nonetheless "continued to indicate that it was [Gordon Rees'] plan" to represent Mr. DeNaut, until on or around January 9, 2023, when it and Coinmint reviewed a document that they assumed (wrongly) was evidence that Mr. DeNaut was an advisor to Katena. *See* Day Two Tr. at 50:22–51:8, 69:12–21, 73:3–5; 112:20–113:1.[3] Mr. Alford admitted that he did not tell Katena's counsel it was purportedly only Gordon Rees' "plan" to represent Mr. DeNaut, because "nuance is dangerous in litigation with your opponent." *Id*. at 95:16–96:4, 96:9–23 (emphasis added). In other words, to reconcile his account of the January 6 call with a conflicting documentary record that now cannot be avoided, Mr. Alford's current position is to assert that he misled opposing counsel in the past,[4] but is testifying accurately now. Mr. Alford's credibility suffers from these gymnastic shifts of his account, particularly when juxtaposed with Mr. DeNaut's consistency.

Mr. Alford's account of the January 6 call is not credible for other reasons. Mr. Alford testified that after routine pleasantries, Mr. DeNaut blurted out an unprompted opinion that prevented Mr. Alford from ever discussing—*at all*—the possibility of Gordon Rees representing Mr. DeNaut. *Id*. at 61:8–10, 111:6–18. That Mr. DeNaut would disclose his sincere concerns with aspects of Coinmint's case without first discussing (and being reassured about) his role in the arbitration at a minimum, is simply not credible. Rather, Mr. DeNaut raising thorny factual issues

---

[3] Mr. Foret testified that after he reviewed documents produced in the arbitration, he "sent an email to Mr. Alford and I believe Mr. Lemus about what I was seeing; and we then had a conversation . . . about Mr. DeNaut and whether we could sponsor him as a witness in the underlying arbitration." *See* Day One Tr. at 232:9–16. Neither Coinmint nor Gordon Rees produced any such email—which would be highly probative and relevant—to the parties, nor did they produce it, as directed by an order of this Court, for *in camera* review. *See* Order, *Katena Computing Techs., Inc. v. Jim DeNaut*, No. 23-mc-48, Dkt. No. 78 (D. Conn. Aug. 2, 2023).

[4] Mr. Alford's willingness to stretch the truth is reflected by the fact he "confirm[ed]" to Katena by email in December 2022 that he represented Mr. DeNaut prior to having even spoken to Mr. DeNaut. *See* Exhibit V, Email from F. Alford to R. Foret *et al.* at GRSM_0000359 (Dec. 28, 2022).

he believed Gordon Rees should explore is *exactly* the type of discussion one would expect to have with one's lawyer in a confidential, protected setting.  Mr. Alford's notes of the one-hour-plus January 6 call— 

.  Mr. Alford's notes report that

.  Exhibit 51, Notes of January 6, 2023 Call at GRSM0000365 (Jan. 6, 2023); Day One Tr. at 176:4–177:5.  The most logical explanation, which is also the truth, is that Mr. DeNaut felt comfortable sharing these facts because of what he had been promised by Gordon Rees at the start of the call.

Mr. Alford's testimony also cannot be reconciled with that of Mr. Foret.  Mr. Foret first testified that he "d[id not] recall" the topic of representation ever coming up during the January 6 call and that the call was "informational" only.  Day One Tr. at 288:25–289:10, 290:1–11.  Within minutes, Mr. Foret amended his statement and testified that Mr. Alford had explicitly told Mr. DeNaut that Mr. Alford was Coinmint's lawyer *but not Mr. DeNaut's*.  *See id*. at 304:24–305:14.  Immediately afterwards, Mr. Foret contradicted himself again, testifying this time that he in fact did *not* recall Mr. Alford stating to Mr. DeNaut that he represented Coinmint but not Mr. DeNaut.  *Id*. at 305:18–21.  Mr. Alford, on the other hand, said he "c[ould not] remember" whether he told Mr. DeNaut that he was Coinmint's lawyer but not Mr. DeNaut's.  Day Two Tr. at 116:13–24.  Moreover, Mr. Foret testified that Mr. DeNaut provided no new information on the January 6 call.  Day One Tr. at 229:7–9.  Yet Mr. Alford testified (contradictorily) that he had in fact learned new information on the call.  Day Two Tr. at 66:4–21.

In short, there can be but one conclusion:  Mr. DeNaut is telling the truth.  Mr. Alford and Mr. Foret are not.  The record is plain that: Gordon Rees believed Mr. DeNaut would be helpful, *id*. at 47:6–25, 51:2–8; Gordon Rees told Katena's counsel it was representing Mr. DeNaut and then told *Mr. DeNaut* it was representing him; and then Gordon Rees and Coinmint changed their minds, after seeing a document and forming incorrect conclusions based on it.  Exhibit BB, Email from F. Alford to J. Taber *et al.* at KATENA_CT000098 (Jan. 13, 2023); Day Two Tr. at 109:23–110:13.  That is the only fair reading of the evidence—which, again, respectfully, is the only one which comports with common sense.

## II.    Gordon Rees Failed to Warn Mr. DeNaut That It Did Not Represent Him

As discussed above, the evidence is overwhelming that Gordon Rees offered to represent Jim DeNaut, and that Mr. DeNaut accepted that offer.  But assuming (counterfactually) for these purposes that Gordon Rees had not made such an offer, its conduct would have still fallen short for failing to affirmatively explain at the outset of the call to Mr. DeNaut—an unrepresented individual once affiliated with Coinmint—that Gordon Rees represented Coinmint but did not represent him.  *See* Day Two Tr. at 116:13–117:18.

Rule 4.3(b) of the California Rules of Professional Conduct states that when "communicating on behalf of a client with a person who is not represented by counsel, a lawyer shall not seek to obtain privileged or other confidential information" he is not entitled to receive.  Cal. R. Prof. Conduct 4.3(b).  Courts interpreting this rule have recognized that it creates a duty for an attorney to make clear his or her allegiances when communicating with unrepresented individuals.  *See Santos v. United Parcel Serv. Inc. (Ohio)*, 2020 WL 6784220, at *5 n.1 (N.D. Cal. Nov. 18, 2020) (finding no violation of Rule 4.3 by defense counsel in third party interviews where defense counsel "clearly explained its role to potential class members before each interview and did not provide any legal advice," "confirmed that interviewees were not represented by

11

counsel in this matter and received written confirmation of the same," and "[made] clear that the interviewing attorneys may have interests that are adverse to the employees being interviewed."); *Shoreline Computs., Inc. v. Warnaco, Inc*., 2000 WL 371206, at *3 (Conn. Super. Ct. Apr. 3, 2000) (interpreting Connecticut's substantially similar Rule 4.3, and ordering plaintiff's counsel "to comply with Rule 4.3 of the Rules of Professional Conduct by disclosing to [defendant's] former employees that counsel represents the plaintiff in litigation that is presently pending against [defendant].").

In light of these rules and the well-established ethical considerations underlying them, even if Mr. Alford is right about what happened on the January 6 call (which he is not), Mr. Alford was required to give a proper warning to disabuse Mr. DeNaut from believing that Gordon Rees was acting as his lawyers. This is especially so if, according to Mr. Alford's testimony, he attached a "red flag" to Mr. DeNaut on January 6 and began to view him as a potential adversary to Coinmint. *See* George B. Wyeth*,* AMERICAN BAR ASSOCIATION, TALKING TO THE OTHER SIDE'S EMPLOYEES AND EX-EMPLOYEES*,* LITIGATION, SUMMER 1989, at 8, 11 ("As in the case of other third-party witnesses, [ABA Model] Rule 4.3 requires an interviewing lawyer to disclose clearly whether his client's interests are adverse to those of the witness."). Here, the evidence shows that Gordon Rees not only failed to provide any warnings at any time, but also affirmatively and explicitly made Mr. DeNaut believe Gordon Rees would be serving as his lawyers. [5] Indeed, if Gordon Rees saw such red flags, they could have just terminated the conversation, rather than speak for over an hour.

---

[5] As Mr. Alford and others at Gordon Rees are undoubtedly aware, there is a body of well-known caselaw revolving around *Upjohn Co. v. United States*, 449 U.S. 383 (1981), which requires attorneys to adequately explain to corporate employees that they are the company's counsel, not the individual's counsel. Courts in California and Connecticut applying federal common law have extended *Upjohn* protections to a corporation's former employees (which Coinmint has claimed—incorrectly—that Mr. DeNaut is, in referring to him repeatedly as Coinmint's former "Acting CEO"). *See* Day One Tr. at 212:6–11, 251:24–252:1; Exhibit NN, Pre-Hearing Brief of Intervenor Coinmint, LLC (Aug. 2, 2023) at 5, 6, 15. *See also,, e.g., In re Coordinated Pretrial Proc. in Petroleum Prods. Antitrust Litig*., 658 F.2d 1355, 1361 (9th Cir. 1981) (recognizing that although *Upjohn* was limited to current employees, the same rationale may apply to former employees because "the attorney-client privilege is served by the certainty that

**III.    The Documentary Record and Testimony Elicited at the Evidentiary Hearing Refuted Coinmint's Defenses**

Mr. DeNaut's pre-hearing brief addressed the purported defenses to Gordon Rees' conduct that Coinmint raised prior to the evidentiary hearing.  *See* Pre-Hearing Br. at 13–16.  Here, Mr. DeNaut addresses the arguments that Gordon Rees appeared to pursue through its questioning at the evidentiary hearing itself.  None of the arguments have any merit.  *First,* Mr. DeNaut was never adverse to Coinmint—much less to the extreme level that would be required for him not to reasonably believe that Gordon Rees could represent him (particularly where Gordon Rees explicitly said it would).  *Second,* Mr. DeNaut's discussions with Gordon Rees reflected protected, confidential information.  And *third,* Gordon Rees provided Mr. DeNaut legal advice and offered Mr. DeNaut legal services during the January 6 call.  Each issue is addressed below.

**A.    Mr. DeNaut Was Not Adverse to Coinmint and Reasonably Believed Coinmint's Lawyers Could Represent Him**

Both in its pre-hearing brief and at the hearing itself, Coinmint pursued a counterfactual narrative that Mr. DeNaut could not reasonably believe that Coinmint's lawyers could also represent him personally, because he was "adverse" to Coinmint as of January 6, 2023, if not before.  This theory was debunked during the hearing based on Mr. DeNaut's credible testimony and all the documents in evidence.  That record established, indisputably, that:

- As Katena's counsel has confirmed, Mr. DeNaut never accepted the advisor agreement proposed by Katena that Coinmint had touted as proof of Mr. DeNaut's adversity;

---

conversations between the attorney and client will remain privileged after the employee leaves."); *Peralta v. Cendant Corp.*, 190 F.R.D. 38, 41 (D. Conn. 1999) (adopting Chief Justice Burger's concurrence in *Upjohn* and extending privilege to cover communications between corporate counsel and former employees).  California and Connecticut federal courts applying *state* law, on the other hand, have not extended *Upjohn* protections, as such, to communications between company counsel and former employees.  Whether *Upjohn* and its progeny apply, however, does not answer the question of what types of warnings are required under state ethics rules.  Under those rules, Mr. Alford was required, at a minimum, to inform Mr. DeNaut that Gordon Rees represented Coinmint but not Mr. DeNaut.  *See also* Cal. R Prof. Conduct 4.3(a) (requiring similar warnings when an unrepresented person mistakenly believes that lawyer may represent him).

instead, after considering the proposal, Mr. DeNaut rejected it, Day One Tr. at 46:15–48:2, 235:24–236:23; Transcript of July 26, 2023 Status Conference at 23:10–16;

- Mr. DeNaut never worked for Katena, was never paid by Katena, never invested in Katena, and never attempted to act on behalf of Katena with respect to contracts, government reporting, or otherwise (as he could not), Day One Tr. at 49:3–14, 90:6–24, 184:22–185:9;

- Mr. DeNaut's last interactions of any sort with Katena were in the Spring of 2022, long before the January 6, 2023 call. In fact, discussions regarding business strategy largely ended in *March 2022*, with only residual communication lasting until May or early June 2022 before contact ceased,[6] *see id*. at 55:10–25; and

- The fact of Mr. DeNaut's interacting with Katena was hardly a secret to Coinmint; Mr. DeNaut had numerous discussions with Mr. Foret about the topic. *See id*. at 165:10–18, 217:8–22. And immediately following the January 6, 2023 call, Mr. DeNaut forwarded Mr. Foret over a dozen of his discussions with Katena. *Id*. at 74:23–76:2; Exhibit A, Emails from J. DeNaut to R. Foret (Jan. 6-7, 2023) at DENAUT-DCONN-000003–90, -93–94, -126–127, -137–149; COINM0062, -70–71.

Moreover, Mr. DeNaut testified credibly—and Coinmint has not produced a shred of evidence to contradict him—that Mr. DeNaut's efforts with Katena were intended to *help* Coinmint, not hurt it. Mr. DeNaut testified (again, with no evidence to refute him) that he was hoping to find a solution to the dispute between Katena and Coinmint, Day One Tr. at 52:25–53:23, and that if he and/or other investors could "step into the shoes" of Coinmint with respect to the purchase order, *id*. 198:9–17, that would raise the odds of Coinmint getting its money back.

---

[6] The timeline of Mr. DeNaut's communication with Katena, as well as other key events, are illustrated in greater detail at Appendix A.

*Id.* at 53:16–54:15.   Even Mr. Foret, Coinmint's General Counsel, testified that in his role overseeing the contract dispute, he wanted Mr. DeNaut's help and actively sought it out.   *See id.* at 246:14–23.   Indeed, Mr. Foret conceded that the specific strategies Mr. DeNaut was pursuing with Katena could be in Coinmint's best interests.   *Id.* at 244:9–14, 246:14–23, 247:14–248:3, 251:4–20.   Mr. Foret was aware of Mr. DeNaut's actions in this respect, a fact that is supported by his own notes of a conversation with Mr. DeNaut indicating that a "[third] party [could be] stepping into [Coinmint's] shoes to buy machines."   Exhibit O, Text Messages Between R. Foret and J. DeNaut at COINM0093 (Nov. 30, 2022).

As for the November 16, 2021 so-called "demand letter" from Coinmint's first counsel,[7] TCF Law, Mr. DeNaut testified credibly that he believed the letter was "inaccurate," Day One Tr. at 57:12–14, 144:12–14, that he spoke to Mr. Foret to clarify the situation, and that he received comfort that he was not being targeted by Coinmint.   *Id.* at 59:21–60:13.   Indeed, the text messages between Mr. Foret and Mr. DeNaut indicate that they were working cooperatively together the very next day after Mr. DeNaut received the letter.   Exhibit N, Text Messages Between R. Foret and J. DeNaut at COINM0083 (Nov. 17, 2021).   Following the letter, Mr. Foret continued to talk to Mr. DeNaut on a frequent basis, to gather information and obtain assistance regarding the dispute with Katena.   Day One Tr. at 245:7–246:18, 265:8–16.   In 2022, Mr. Foret arranged for Mr. DeNaut to speak to Coinmint's second set of counsel, Choate Hall & Stewart—which Mr. Foret conceded was a helpful conversation that made Coinmint think Mr. DeNaut could be a helpful witness for Coinmint in the arbitration.   *Id.* at 260:9–261:1.   Mr. Foret also arranged the January 6 call with Gordon Rees and received the information Mr. DeNaut willingly forwarded

---

[7] Gordon Rees is Coinmint's third set of lawyers in the dispute with Katena.

immediately afterwards.  *Id.* at 223:3–6.  Clearly, Mr. DeNaut did not believe himself to be adverse to Coinmint, and, as of January 6, 2023, neither did Coinmint or Gordon Rees.

In any event, Coinmint's "adversity" argument is a red herring, as courts have found that adversity can preclude an individual from having a reasonable belief in representation only in extreme scenarios indisputably not present here.  For example, courts have found a lack of reasonable belief in representation if an individual knows that the lawyer he is speaking to represents the individual's *adversary in litigation*.  *See, e.g.*, *Rand v. Birbrower*, 31 F. App'x 748, 752 (2d Cir. 2002) (holding it unreasonable to believe that an attorney represents both parties in a transaction in which they are adverse as "stated on the face of the complaint.").  Short of that scenario, courts are reluctant to reject a client's belief in representation as long as it is sincere.

*Kearns v. Fred Lavery Porsche Audi Co.*, 745 F.2d 600 (Fed. Cir. 1984), is illustrative. There, a plaintiff-inventor sought to disqualify the defendant's attorney in a patent infringement suit because he previously consulted with the attorney about a different matter.  *See id.* at 601–02. The defendant, a manufacturer, argued that the plaintiff "knew almost from the first moment that [defense counsel] represented [another client] which [plaintiff] had already accused of infringing his patents, and [plaintiff] could not have believed that [defense counsel] would even consider representing [plaintiff]."  *Id.* at 603.  Even so, the court *rejected* the argument that the plaintiff could not reasonably believe the defendant's attorney could represent it, crediting evidence showing a reasonable belief in representation and that defendants had offered "no reason why even a fully knowledgeable inventor would do the things [plaintiff] did in this instance, if he believed that [defense counsel] continued to represent the potential adversary."  *Id.* at 604–05.  The facts of this case are simply miles away from any extreme fact patterns that could preclude Mr. DeNaut

from reasonably believing that Gordon Rees would represent him—especially in the context here in which *Gordon Rees offered to do so.* [8]

### B. Mr. Foret's Participation in the January 6 Call Was Consistent With Mr. DeNaut's Reasonable Belief That Gordon Rees Was Representing Him

Mr. Foret's presence on the January 6 call between Mr. DeNaut and Gordon Rees is consistent with Mr. DeNaut's reasonable belief that Gordon Rees represented him.  It is undisputed that Mr. DeNaut was in frequent contact with Mr. Foret even after Mr. DeNaut disassociated from Coinmint.  Day One Tr. at 49:15–50:6, 216:18–24.  Indeed, it was Mr. Foret who arranged the meeting on January 6 between Gordon Rees and Mr. DeNaut because Mr. Foret and Gordon Rees thought Jim DeNaut would be "helpful" to Coinmint.  *Id*. at 63:5–22, 223:3–6.  It is unsurprising then that Mr. DeNaut found it "natural" that Mr. Foret would be present on the January 6 call, given his reasonable impression that the call was for the benefit of Coinmint, and given his frequent contacts with Mr. Foret about the same.  *Id.* at 65:10–18.  That Mr. DeNaut called Mr. Foret an hour after the conclusion of the January 6 call to ask if it was beneficial—and then voluntarily forwarded a wide array of emails—further illustrates that Mr. DeNaut believed he was acting to the benefit of Coinmint, and that their interests were aligned.  *See id*. at 73:12–74:1.

It is axiomatic that privileged and confidential information can be exchanged by parties with aligned interests.  *See, e.g., Anten v. Superior Ct.*, 233 Cal. App. 4th 1254, 1259 (Cal. Ct. App. 2015), *as modified* (Feb. 10, 2015) (internal citations omitted) ("[C]ommunications made by

---

[8] Because Mr. DeNaut was not adverse to Coinmint, there is nothing he could have said to Gordon Rees to provide any sort of "warning" on the subject on January 6, 2023.  In any event, even if some adversity had existed, a client has no duty to "warn" his counsel of anything, or provide any particular information—duties run from counsel to client, not the other way around.  *See, e.g., Lopez v. Pannone*, 2011 WL 4031537, at *3 (Conn. Super. Ct. Aug. 17, 2011) ("Connecticut courts and the Rules of Professional Conduct place the primary responsibility for recognizing and resolving issues of conflict of interest on the involved attorney who is in the best position to determine whether a conflict exists."); *Myers v. Superior Ct.*, 2018 WL 3598085, at *3 (Cal. Ct. App. July 27, 2018) (counsel "is in the best position professionally and ethically to determine when a conflict of interest exists or will develop in the course of [representation].") (internal citations omitted).

parties united in a common interest to their joint or common counsel" are privileged).  Indeed, in situations in which two parties privately confer with counsel, courts have recognized that an attorney-client relationship may form between an initially unrepresented party and the other's counsel, rendering communications between the parties privileged and confidential.  *See, e.g., United States v. Dennis*, 843 F.2d 652, 656–57 (2d Cir. 1988) (applying the Connecticut law of privilege and holding that statements made by one defendant to another co-defendant's counsel were privileged); *State v. Cascone*, 487 A.2d 186 (Conn. 1985) (similar).  That is precisely what occurred on January 6: Mr. DeNaut, then an unrepresented individual, at the behest of Mr. Foret, joined a call with Mr. Foret and Coinmint's counsel, Gordon Rees, with whom he reasonably believed his interests were aligned.  Compounded by Gordon Rees' explicit offers to represent Mr. DeNaut, Mr. DeNaut reasonably believed that Gordon Rees was acting as his attorneys (indeed, in part because he did not have counsel himself, nor was he advised to obtain counsel), and that he formed an attorney-client relationship with Gordon Rees such that information exchanged during the January 6 call was protected by the attorney-client privilege.

### C.    Mr. DeNaut Shared New, Confidential Information With Gordon Rees

The testimony elicited at the hearing confirmed that Mr. DeNaut shared confidential information with Gordon Rees during the January 6 call.  Taking care not to waive privilege as to the detailed substance of the information discussed on January 6, Mr. DeNaut testified that he discussed three main topics: negotiations around the Katena-Coinmint purchase agreement, who executed the purchase agreement, and Coinmint's "ability-to-pay issues" with respect to the purchase agreement.  Day One Tr. at 176:4–16.  All of the topics concerned deeply factual, non-public matters.  Moreover, the last category—ability to pay—had not been addressed on Mr. DeNaut's earlier call with Choate Hall & Stewart; Mr. DeNaut was providing new insight for exploration.  *See id*. at 31:11–18, 176:10–13, 192:21–193:3 (describing as "extensive" the

discussion of the ability-to-pay topic, in response to the Court's question).  The quality and quantum of information discussed easily meet the standards under which prospective or actual attorney-client relationships are found to have formed.  *See* Pre-Hearing Br. at 11–12; *see, e.g., Costco Wholesale Corp. v. Superior Ct.,* 47 Cal. 4th 725, 736 (Cal. 2009) ("when the communication is a confidential one between attorney and client, the entire communication, including its recitation or summary of factual material, is privileged."); *Blumenthal v. Kimber Mfg., Inc.*, 826 A.2d 1088, 1098 (Conn. 2003) (the attorney-client privilege "extends to the giving of information to the lawyer to enable counsel to give sound and informed legal advice.") (internal citations omitted).

### D.    Gordon Rees Provided Legal Advice to Mr. DeNaut

The testimony at the evidentiary hearing also confirmed that legal advice was sought and given on January 6, 2023.  As Mr. DeNaut understood based on Gordon Rees' prefatory remarks, this call was part of the process of preparing him for an eventual deposition on Coinmint's behalf in the arbitration, *see* Day One Tr. at 65:21–66:9—an exercise that lawyers do all the time on the understanding that the contents of the discussion are privileged.  *See, e.g., Wang v. Heck*, 203 Cal. App. 4th 677, 685 (Cal. Ct. App. 2012) ("the protective mantle of the privilege . . . protects prior preparatory activity leading to the witnesses' testimony.") (internal citations omitted).  More specifically, Mr. DeNaut testified that he asked for explicit guidance about the acceptable format for delivering his testimony in the arbitration, and Gordon Rees provided that guidance.  *See* Day One Tr. at 93:18–24, 182:15–183:6.  Mr. DeNaut also testified that he sought advice surrounding the ability to pay topic.  *Id*. at 183:17–184:8.  This was not a call involving small talk between an individual and people who happened to be lawyers; this was a call about a pending arbitration and how the facts, the arguments, and Mr. DeNaut's testimony were likely to play out.  That is absolutely a privileged attorney-client conversation under any state's rules.  *See, e.g., Marino v.*

19

*Urological Assocs. of Bridgeport, P.C.,* 2019 WL 5298730, at *1 (Conn. Super. Ct. Sept. 19, 2019) (conversation between attorney and potential witness privileged where witness "sought legal advice and assistance from [attorneys] as to [the witness's] role, involvement and participation in the present matter.") (internal citation omitted).

## IV.   The Equities Favor Mr. DeNaut

As explained in Mr. DeNaut's pre-hearing brief, while Coinmint is entitled to counsel of its choice, that right must be balanced against the vital importance of protecting the sanctity of the attorney-client relationship. *See* Pre-Hearing Br. at 17; *People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1136 (Cal. Sup. Ct. 1999) ("The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process.") (internal citation omitted); *Rosen v. Cream*, 2018 WL 2146761, at *3 (Cal. Ct. App. May 10, 2018) ("The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar.") (internal citation omitted). The conflicts that Mr. Alford created are imputed to the Gordon Rees firm. *See* Cal. R. Prof. Conduct 1.10(a) (firms cannot represent clients when "any one of them practicing alone would be prohibited from doing so by rules 1.7 or 1. 9"); Conn. R. Prof. Conduct 1.10(a) (same); Cal. R. Prof. Conduct 1.18, Comment 4 (same as to prospective attorney-client relationships); Conn. R. Prof. Conduct 1.18, Comment 4 (same). A finding in favor of Mr. DeNaut resulting in Coinmint losing its ability to use Gordon Rees to cross-examine Mr. DeNaut in the underlying arbitration is warranted, regardless of any burden it creates. *See Gordon v. Superior Ct.*, 55 Cal.App.4th 1546, 1557 (Cal. Ct. App. 1997) (noting that "[t]he privilege is absolute . . . without regard to relevance, necessity or any particular circumstances peculiar to the case.").

## CONCLUSION

The evidence unequivocally establishes that Mr. DeNaut formed an attorney-client relationship with Gordon Rees on January 6, 2023 based on the reasonable belief that Gordon Rees was serving as his legal counsel in the Coinmint-Katena arbitration.  For the above-stated reasons, Mr. DeNaut respectfully requests an order from the Court (1) prohibiting Gordon Rees from questioning Mr. DeNaut in the arbitration; and (2) directing Coinmint and Gordon Rees not to disclose the confidential information that Mr. DeNaut shared during the January 6, 2023 call.

Respectfully submitted,

/s/ Benjamin Sirota
Benjamin Sirota (phv207285)
Steven G. Kobre (phv207282)
David A. Slossberg (ct13116)          Jonathan D. Cogan (phv02197)
Kristen L. Zaehringer (ct27044)          Tapan R. Oza (phv207284)

HURWITZ, SAGARIN, SLOSSBERG & KNUFF          KOBRE & KIM LLP
LLC          800 Third Avenue
147 North Broad Street          New York, New York 10022
Milford, CT 06460          Tel:     +1 212 488 1200
Juris No. 026616          Fax:     +1 212 488 1220
Tel:     (203) 877-8000          Email: benjamin.sirota@kobrekim.com
Fax:     (203) 878-9800               steven.kobre@kobrekim.com
Email: dslossberg@hssklaw.com               jonathan.cogan@kobrekim.com
     kzaehringer@hssklaw.com               tapan.oza@kobrekim.com

*Attorneys for Respondent Jim DeNaut*

21

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on August 25, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties' counsel of record by operation of the Court's electronic filing system.

*/s/ Benjamin Sirota*
Benjamin Sirota
